BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE DEPARTMENT OF FINANCIAL INSTITUTIONS has requested an opinion on the following question:
Is a bank required to pledge securities for deposits consisting of funds held in trust for employees of a local government as compensation deferred from income taxation pursuant to the terms of Internal Revenue Code section 457?
 CONCLUSION
A bank is required to pledge securities for deposits consisting of funds held in trust for employees of a local government as compensation deferred from income taxation pursuant to the terms of Internal Revenue Code section 457.
 ANALYSIS
Funds owned or held by a local government are subject to numerous statutory restrictions and conditions designed to safeguard the funds. (79 Ops.Cal.Atty.Gen. 1, 3-6 (1996); 57 Ops.Cal.Atty.Gen. 534, 535-536 (1974).) Among the requirements is that a bank must pledge collateral for deposited funds. (Gov. Code, §§ 53635, 53652.)[1] We are asked whether the pledged collateral requirement applies to deferred compensation funds held in trust on behalf of employees of a local government. We conclude that the requirement is applicable to such funds.
Section 53635 states in part:
 "As far as possible, all money belonging to, or in the custody of, a local agency, including money paid to the treasurer or other official to pay the principal, interest, or penalties of bonds, shall be deposited for safekeeping in state or national banks, savings associations or federal associations, credit unions, or federally insured industrial loan companies in this state selected by the treasurer or other official having the legal custody of the money; or, unless otherwise directed by the legislative body pursuant to section 53601, may be invested in the investments set forth below. . . ."
Section 53652 specifies the amount of collateral that a bank must pledge to cover any deposits of public funds in its possession:
 "To secure active or inactive deposits a depository shall at all times maintain with the agent of depository eligible securities in securities pools, pursuant to sections 53656 and 53658, in the amounts specified in this section. . . ."[2]
The bank's pledge of securities is intended to protect the public funds from loss due to the bank's financial mismanagement, failure, or bankruptcy. (See § 53661, subd. (d); 57 Ops.Cal.Atty.Gen., supra, at pp. 540-541; 37 Ops.Cal.Atty.Gen. 37, 38-39 (1961).)
Until recently, it was clear that a bank was required to pledge securities for any deposits consisting of deferred compensation funds of local government employees. This was because under former state and federal law, local government employees could only qualify for the special "deferred" income tax advantages if the funds were considered to be owned and held by the local government until distributed to the employees. (See § 53609; 79 Ops.Cal.Atty.Gen., supra, at pp. 3-6; 57 Ops.Cal.Atty.Gen., supra, at pp. 535-536, 540.)[3] Hence, as the local government's funds, the deposits would be subject to the requirements and conditions of sections 53635 and 53652, among others.
However, in 1996, the federal law was changed to require that deferred compensation funds be "held in trust for the exclusive benefit of participants and their beneficiaries." (Pub.L. No. 104-188, § 1448 (a).) A similar amendment of state law followed. (Stat. 1998, ch. 996, § 6.) Do these recent changes in federal and state law require a different treatment of the funds under the terms of sections 53635
and 53652?
Internal Revenue Code section 457 (26 U.S.C. § 457) now states:
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(b) Eligible deferred compensation plan defined. — For purposes of this section, the term `eligible deferred compensation plan' means a plan established and maintained by an eligible employer —
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(6) except as provided in subsection (g), which provides that —
 "(A) all amounts of compensation deferred under the plan,
 "(B) all property and rights purchased with such amounts, and
 "(C) all income attributable to such amounts, property, or rights, shall remain (until made available to the participant or other beneficiary) solely the property and rights of the employer (without being restricted to the provision of benefits under the plan), subject only to the claims of the employer's general creditors.
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(g) Governmental plans must maintain set-asides for exclusive benefit of participants. —
 "(1) In general. — A plan maintained by an eligible employer described in subsection (e)(1)(A) shall not be treated as an eligible deferred compensation plan unless all assets and income of the plan described in subsection (b)(6) are held in trust for the exclusive benefit of participants and their beneficiaries.
 "(2) Taxability of trusts and participants. — For purposes of this title —
 "(A) a trust described in paragraph (1) shall be treated as an organization exempt from taxation under section 501(a), and
 "(B) notwithstanding any other provision and title, amounts in the trust shall be includible in the gross income of participants and beneficiaries only to the extent, and at the time, provided in this section.
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
State law now conforms to the federal requirements for deferred compensation plans. Such plans may be established for the officers and employees of local governments under the provisions of section 53213, subdivision (a):
 "Each local agency may establish for its officers and employees a deferred compensation plan. Participation in such plan shall be by written agreement between such officers and employees and the governing body of the local agency which shall provide for deferral of a portion of such officers' or employees' wages. Officers and employees of any local agency having a deferred compensation plan may authorize deductions to be made from their wages for the purpose of participating in such deferred compensation plan."
The counterpart requirement that the funds be held "in trust for the exclusive benefit of employees" is set forth in section 53213.5, subdivision (a):
 "Each deferred compensation plan established pursuant to this article shall conform with the requirements promulgated under the federal Small Business Job Protection Act of 1996 [Pub.L. No. 104-188]. Those requirements include, but are not limited to, the holding of assets in a plan that complies with Sections 401(a), 401(k), and 457 of the federal Internal Revenue Code in trust for the exclusive benefit employees."
In analyzing the relevant state and federal laws, we may rely upon and apply well established principles of statutory construction. "To interpret statutory language, we must `ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.]" (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997)14 Cal.4th 627, 632.) "Our first step [in determining the Legislature's intent] is to scrutinize the actual words of the statute, giving them a plain and common-sense meaning. [Citations.]" (People v. Valladoli (1996)13 Cal.4th 590, 597.) "In analyzing statutory language, we seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose. . . ." (Harris v. Capital Growth Investors XIV (1991) 52 Cal.3d 1143, 1159.) "`[S]tatutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.'" (Walnut Creek Manor v. Fair Employment Housing Com. (1991) 54 Cal.3d 245, 268.) "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. [Citations.]" (Dyna-Med, Inc. v. Fair Employment Housing Com. (1987) 43 Cal.3d 1379, 1387.)
The "in trust" requirement was added by Congress in 1996 to prevent the loss of deferred compensation funds due to the financial mismanagement of the funds by local governments. In a report prepared by the United States General Accounting Office, the problems addressed by the legislation were described as follows:
 "Because 457 plans maintain their tax-deferred status by requiring that the sponsoring government own the deferred amounts, plan participants may risk the loss of some or all their deferrals if their sponsoring government goes bankrupt or funds are in some way mismanaged or lost. For example, if Orange County, California, is unable to emerge from its current bankruptcy proceeding without providing its general creditors with a settlement under which those creditors receive 100 cents on the dollar, the county's 457 plan participants will be forced to share proportionately in the losses of those general creditors.
 "Further, because any amounts set aside by the employing governments to pay section 457 plan obligations are owned by the sponsoring governments, some governments may view them as funds available for their own use. IRC section 457 does not prescribe that any 457 plan monies must be maintained to pay future benefits. In late 1992, the Securities and Exchange Commission (SEC) staff learned that Los Angeles County intended to borrow $250 million from the amount set aside to pay its 457 plan obligations to cover payroll expenses. When SEC questioned this course of action as potentially impairing the status of the funds under the federal securities laws, the county abandoned its proposal." (U.S. General Accounting Office, Section 457 Plans Pose Greater Risk Than Other Supplemental Plans (1996) pp. 4-5.)
The legislative history of the 1996 federal legislation clearly establishes its purpose:
"Present Law
 "Until deferrals under a section 457 plan are made available to a plan participant, such amounts deferred, all property and rights purchased with such amounts, and all income attributable to such amounts, property, or rights must remain solely the property and rights of the employer, subject only to the claims of the employer's general creditors.
"Reasons for change
 "The Committee is concerned about the potential for employees of certain State and local governments to lose significant portions of their retirement savings because their employer has chosen to provide benefits through an unfunded deferred compensation plan rather than a qualified pension plan. Therefore, the Committee finds it appropriate to require that benefits under a section 457 plan of a State and local government should be held in a trust (or custodial account or annuity contract) to insulate the retirement benefits of employees from the claims of the employer's creditors.
"Explanation of provision
 "Under the bill, all amounts deferred under a section 457 plan maintained by a State and local governmental employer have to be held in trust (or custodial account or annuity contract) for the exclusive benefit of employees. The trust (or custodial account or annuity contract) is provided tax-exempt status. Amounts will not be considered made available merely because they are held in a trust, custodial account, or annuity contract." (1996 U.S. Code Cong. Admin. News, at pp. 1559-1560, fn. omitted.)
It is readily apparent that the 1998 amendment of section 53213.5
by the Legislature to require deferred compensation funds to be held "in trust for the exclusive benefit of employees" was intended to provide consistency with federal law in granting greater protection for such funds prior to their distribution to employees.
Under the recent legislation, the deferred compensation funds are still considered to be part of "a plan established and maintained by" a public agency (Int. Rev. Code, § 457(b)), which "must maintain set-asides for exclusive benefit of participants" (Int. Rev. Code, § 457(g)). This language establishes that public agencies are to remain accountable for the funds, with the "held in trust" requirement added to prevent the funds from being diverted for other purposes.
Accordingly, we believe the funds continue to constitute "public funds" although held in trust. Banks must therefore continue to pledge securities when such funds are deposited as required by the provisions of sections 53635 and 53652. Our construction of the terms of sections 53213.5, 53635, and 53652 effectuates the purpose of the Legislature to protect deferred compensation funds of local government employees. Both the "in trust" requirement and the pledged collateral requirement may thereby be harmonized to promote their common goal — safety for the deposited funds.
We conclude that a bank is required to pledge securities for deposits consisting of funds held in trust for employees of a local government as compensation deferred from income taxation pursuant to the terms of Internal Revenue Code section 457.
[1] All references hereafter to the Government Code are by section number only.
[2] A "depository" is "a state or national bank, savings association or federal association, a state or federal credit union, or a federally insured industrial loan association . . ." (§ 53630, subd. (c)), and an "agent of depository" is a trust company or trust department of a depository (§ 53630, subd. (d)). The statutory security requirements may be waived "for the portion of any deposits as is insured pursuant to federal law." (§ 53653.)
[3] The purpose of establishing a deferred compensation plan is to provide an income tax advantage to employees by permitting them to defer receipt of a portion of their wages until the cash is withdrawn, usually upon retirement when the employees would be in a lower income tax bracket. (See Herrick v. State of California (1983) 149 Cal.App.3d 156,159; 79 Ops.Cal.Atty.Gen., supra, at p. 2; 57 Ops.Cal.Atty.Gen., supra, at pp. 535-536.)